FILED

September 1 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0724

DA 14-0724

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 258

MONTANA INTERVENTIONAL AND DIAGNOSTIC RADIOLOGY
SPECIALISTS, PLLC; DENNIS L. PALMER, M.D.;
RANDY R. SIBBITT, M.D., and HASSAN MASSOUH, M.D.,

      Plaintiffs and Appellants,

   v.

ST. PETER'S HOSPITAL,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                   In and For the County of Lewis and Clark, Cause No. DDV 2012-630
                   Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                David R. Paoli, Paoli Kutzman, P.C., Missoula, Montana

                Timothy B. Strauch, Strauch Law Firm PLLC, Missoula, Montana

        For Appellee:

                Robert J. Phillips, Mitch J. Vap, Phillips Haffey P.C., Missoula, Montana

Submitted on Briefs:  July 1, 2015
Decided:  September 1, 2015

Filed:

                          Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Montana Interventional and Diagnostic Radiology Specialists, PLLC, (MIDRS), is a professional limited liability company whose members, Drs. Palmer, Sibbitt and Massouh, are engaged in the practice of radiology. St. Peter's Hospital is the only acute-care, community hospital in Helena, Montana, open to the public. Prior to July 2011, St. Peter's Medical Staff granted privileges to qualified, non-employee radiologists, including the physicians of MIDRS and other outside providers. On July 1, 2011, the Hospital "closed" its Radiology Department to all non-employee physicians, regardless of qualification. MIDRS filed a complaint against St. Peter's in August 2012 alleging unfair trade practices and intentional interference with prospective advantage. The First Judicial District Court, Lewis and Clark County, granted the Hospital's motion to dismiss the complaint as untimely, concluding MIDRS filed its complaint outside of the applicable statutes of limitation. MIDRS appeals. We reverse and remand.

## ISSUE

¶2 Did the District Court err in granting St. Peter's motion for judgment on the pleadings and dismissing the primary complaint as time-barred?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 MIDRS and St. Peter's worked together for several years during which the MIDRS physicians provided radiological services through St. Peter's Hospital. Prior to 2006, St. Peter's had an "open" radiology department, meaning the Hospital's Medical Staff granted privileges to qualified, non-employee radiologists to interpret images generated at the Hospital. No contract or employment with the Hospital was required;

2

rather, privileges were granted to qualified radiologists based upon a review of the physician's education, training, competence, experience, ability, personal character, and judgment. MIDRS claims that while it was providing services to the open radiology department, the Hospital frequently solicited MIDRS' doctors to work for the Hospital or to enter into an exclusive contract with St. Peter's, but the doctors declined these solicitations.

¶4 In 2005, MIDRS announced its intent to open a separate and competing imaging facility in Helena. In February 2006, however, the parties entered into a three-year contract under which MIDRS would provide exclusive services to the Hospital and refrain from opening a new facility while the contract was in effect. MIDRS claims that the Hospital repeatedly solicited its doctors to become employees during this timeframe but the radiologists chose to remain independent. As the exclusive contract approached expiration, St. Peter's solicited proposals from various radiological groups, from which the Medical Staff would select a new radiological provider to begin under contract commencing in February 2009. In October 2008, MIDRS submitted a proposal to extend its expiring contract. St. Peter's did not submit MIDRS' proposal to the Medical Staff for consideration; instead, it chose to enter into exclusive contracts with other providers during 2009 and 2010.

¶5 MIDRS asserts that around this same time the Hospital initiated false credentialing charges against the MIDRS' doctors regarding the reading of certain mammograms, and revoked the physicians' medical staff privileges as a result of these credentialing issues. St. Peter's denies this allegation, asserting that the MIDRS' doctors requested termination

of the contract before the February 2009 expiration date and failed to renew their privileges before their privileges expired. The Hospital acknowledges, however, that after the expiration of the exclusive contract with MIDRS, the Hospital's Credentialing Committee, the Medical Executive Committee, and the Hospital Board of Directors voted to revoke the doctors' credentials due to their alleged failure to abide by Mammography Quality Standards Act guidelines. Consequently, MIDRS' radiologists were not allowed to practice at the Hospital after February 2009.

¶6 In 2011, as the exclusive contract between the Hospital and another radiology group was approaching expiration, MIDRS' physicians again applied for staff privileges but were told that the Hospital had "closed" its radiology department and the department would thence forward be staffed only by Hospital personnel. According to MIDRS, the decision to close the radiology department was made after MIDRS announced that it intended to open a stand-alone radiology facility in Helena.

¶7 On August 3, 2012, MIDRS filed a complaint and request for a jury trial in the District Court against the Hospital. The complaint sought declaratory and injunctive relief and damages for unreasonable restraint of trade in violation of the Montana Unfair Trade Practices Act (UTPA), and intentional interference with prospective advantage arising from the Hospital's action to close its radiology department in 2011. On August 6, 2012, MIDRS opened the Helena Imaging Center, a stand-alone facility offering a full range of radiological services and located near the Hospital.

¶8 On November 5, 2012, the Hospital filed its answer to the complaint, asserted affirmative defenses, and counterclaimed against MIDRS for breach of contract. In

4

January 2013, MIDRS responded to the Hospital's counterclaim and presented a counterclaim against the Hospital claiming breach of contract and breach of implied covenant of good faith and fair dealing, and seeking declaratory judgment. On June 20, 2013, St. Peter's filed a motion to dismiss pursuant to M. R. Civ. P. 12(c) arguing that MIDRS failed to commence its action within the two-year statute of limitations under the UTPA or the three-year statute of limitations for intentional interference with prospective advantage. It claimed that all elements of MIDRS' claims were present as of February 2009 when the exclusive contract between St. Peter's and MIDRS expired. Consequently, the Hospital submitted that MIDRS' complaint, filed August 3, 2012, should be dismissed.

¶9      MIDRS countered that it was not claiming restraint of trade or intentional interference based upon the 2009 actions of the Hospital; rather, its claims were premised on the Hospital's July 2011 closure of its radiology department and the anti-competitive impact that this action had upon MIDRS' doctors, its clinic, and all radiology patients in Helena. MIDRS therefore contended that its claims accrued in July 2011 and its complaint was timely under both applicable statutes of limitation.

¶10      Following a hearing, the District Court determined that MIDRS' claims accrued in February 2009 when the Hospital denied it staff privileges and the MIDRS' physicians were no longer allowed to provide radiological services to St. Peter's. The court therefore dismissed MIDRS' complaint as untimely. Because the counter claims were not dismissed, MIDRS moved to have the court's order certified as final under M. R. Civ.

P. 54(b). On October 9, 2014, the District Court granted MIDRS' motion and entered its Order on Motion for Rule 54(b) Certification. MIDRS filed a timely appeal.

## STANDARD OF REVIEW

¶11 A party moving for judgment on the pleadings pursuant to Rule 12(c) must establish that no issues of fact exist and that it is entitled to judgment as a matter of law. A court must assume that all of the well-pleaded factual allegations in the nonmovant's pleadings are true and that all contravening assertions in the movant's pleadings are false when evaluating a Rule 12(c) motion. A motion for judgment on the pleadings is appropriate in situations where all material allegations of fact are admitted or not controverted in the pleadings, and only questions of law remain to be decided by the court. *Conway v. Benefis Health Sys.*, 2013 MT 73, ¶ 20, 369 Mont. 309, 297 P.3d 1200.

¶12 The issue of whether a district court properly applied the statute of limitations and granted a motion for judgment on the pleadings presents a question of law. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Lundquist v. McBeth*, 2001 MT 311, ¶ 13, 308 Mont. 1, 38 P.3d 831 (internal citations omitted).

## DISCUSSION

¶13 *Did the District Court err in granting St. Peter's motion for judgment on the pleadings and dismissing the primary complaint as time-barred?*

¶14 MIDRS argues that the District Court's decision in this case was erroneous for three reasons. First, judgment on the pleadings should have been denied because the Hospital disputed multiple allegations of material fact set forth in MIDRS' complaint.

6

Judgment on the pleadings is appropriate only where all allegations of material fact are admitted or not controverted in the pleadings, and only questions of law remain to be decided by the court. Second, the court erred by construing the pleadings in a manner favorable to the Hospital and finding as true the Hospital's contravening allegation that no new harm to MIDRS or its doctors could have occurred after February 2009. As noted above, when evaluating a Rule 12(c) motion, the court was required to assume that all of MIDRS' well-pleaded factual allegations were true and that the Hospital's contravening assertions were false. *Conway*, ¶ 20. Lastly, MIDRS claims the District Court committed legal error by concluding that the applicable statute of limitations had expired *before* the conduct forming the basis of MIDRS' claims as stated in the complaint had occurred.

¶15 In its order of dismissal, the District Court determined that it was the "denial of staff privileges" in 2009 that MIDRS alleged in its complaint as the cause of its harm. Based upon this determination, the court ruled that MIDRS' complaint was untimely. MIDRS maintains on appeal that the District Court misinterpreted its complaint and that it was not the 2009 loss of staff privileges or the Hospital's refusal to extend its exclusive contract that constituted the anti-competitive activities and caused the harm for which it seeks relief; rather, it was the Hospital's action to close its radiology department in July 2011 that gives rise to its claims under the UTPA and for intentional interference with MIDRS' prospective advantage. It notes that the District Court acknowledged this in its October 2014 order on certification, stating:

The primary complaint alleged facts arising out of the Hospital's closing of its radiology department in July 2011. As alleged, the decision to close the Department was designed to prevent MIDRS from competing in the Helena radiology services market and to solidify the Hospital's monopoly power, causing harm to competition in both the provider and patient markets in the Helena radiology services market.

MIDRS contends that the District Court's order on certification is correct, and contravenes its order of dismissal which was premised upon the court's conclusion that all of MIDRS' claims stemmed from its physicians' loss of staff privileges in 2009.

¶16 MIDRS argues that the District Court misinterpreted its restraint of trade claims when it looked only to the background allegations in the complaint pertaining to the 2009 interactions between MIDRS and the Hospital. MIDRS' doctors assert that the court failed completely to consider the anti-competitive impact of St. Peter's 2011 closing of its radiology department in response to MIDRS' decision to open a stand-alone radiology practice. It is these actions that underlie MIDRS' antitrust and interference claims. MIDRS maintains that the elements of these claims did not and could not accrue until the Hospital took the action that constituted antitrust activity, *i.e.*, closing its radiology department and creating a "horizontal" rather than a "vertical" restraint on trade.

¶17 According to MIDRS, prior to 2011 the Hospital was not a direct competitor in the radiology provider market and instead entered into exclusive contracts with non-employee radiologists. MIDRS further asserts that prior to 2011, applications for privileges were reviewed for qualifications, and employment by the Hospital was not a requisite to obtaining medical privileges. MIDRS contends this changed and the Hospital became a direct competitor in the radiology market in 2011, when it decided that only

8

Hospital employees could provide radiological services and precluded non-employee radiologists from obtaining medical privileges. It was at this point, MIDRS argues, that the Hospital began to exercise a monopoly power, creating the horizontal restraint on trade that forms the basis of its antitrust and UTPA allegations.

¶18 As explained by the U.S. Supreme Court in *United States v. Topco Assocs.*, 405 U.S. 596, 92 S. Ct. 1126 (1972), "horizontal" restraint of trade occurs when competitors at the same level of competition enter into an agreement to allocate the market in a manner to minimize competition. "Vertical" restraint of trade occurs when parties at different levels of the distribution chain, for example, manufacturers and retailers, enter into an agreement that minimizes competition. The U.S. Supreme Court has "reiterated time and time again that 'horizontal territorial limitations . . . are naked restraints of trade with no purpose except stifling of competition.' Such limitations are *per se* violations of the Sherman Act." *Topco*, 405 U.S. at 608, 92 S. Ct. at 1133-34 (internal citations omitted). MIDRS contends that this restraint of trade also violated the UTPA.

¶19 The UTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 30-14-103, MCA. Section 30-14-201, MCA, further provides "[t]he legislature declares that the purpose of [the Montana UTPA] is to safeguard the public against the creation or perpetuation of monopolies and foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented. This part must be liberally construed so that its beneficial purposes may be accomplished." MIDRS asserts that in closing its radiology department, the Hospital

created an unlawful restraint on trade by empowering the Hospital to control the quantity, quality, and cost of radiology services in Helena, thus driving up prices for patients, preventing competition, and creating a monopoly.

¶20 As noted above, when considering a motion for judgment on the pleadings, a court must assume that all of the well-pleaded factual allegations in the opposing party's pleadings are true. In addition, a motion for judgment on the pleadings is appropriate only where all material allegations of fact are either admitted or not controverted in the pleadings, and only questions of law remain for determination by the court. *Conway*, ¶ 20. Based upon the foregoing and assuming as true MIDRS' "well-pleaded factual allegations," we conclude that the accrual of MIDRS' claims cannot be determined from the pleadings alone and that further development of the record is necessary. We have stated that "[i]f all material issues cannot be resolved on the pleadings, then a summary judgment motion or a full trial is necessary." *Firelight Meadows, LLC v. 3 Rivers Tele. Coop.*, 2008 MT 202, ¶ 10, 344 Mont. 117, 186 P.3d 869 (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* vol. 5C, § 1368 at 248-51 (3d ed., Thomson-West 2004)). We therefore reverse and remand for further proceedings.

**CONCLUSION**

¶21 Reversed and remanded.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT